```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Private Jet Services Group, Inc.**

       v.                              Civil No. 14-cv-436-PB
                                        Opinion No. 2015 DNH XXX
**Marquette University**


### MEMORANDUM AND ORDER

Private Jet Services Group, Inc. ("PJS") has sued Marquette University for breaching a two-year air charter contract. Marquette, relying on an arbitration clause in an escrow agreement executed in connection with the air charter contract, moves to stay the action and compel arbitration under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16. PJS responds by arguing that its claim against Marquette is not subject to arbitration because the claim arises from the air charter contract, which does not contain an arbitration clause. As I explain below, Marquette's motion turns on whether a delegation clause in the escrow agreement, which leaves gateway arbitrability questions to the arbitrator, bars this court from resolving the arbitrability question.

I.   BACKGROUND

PJS, a New Hampshire corporation, is a broker of private air charter services. It serves clients that include professional and college sports teams, various performing acts, and businesses. Marquette, a private research university in Wisconsin, has a men's basketball team that competes in the NCAA Division I Big East Conference.

On August 21, 2013, PJS and Marquette entered into a two-year air charter contract, the "Air Services Agreement," under which PJS agreed to provide the Marquette men's basketball team with air transportation to its away games during the 2013-2014 and 2014-2015 seasons. In exchange, Marquette agreed to pay PJS $890,795 for the 2013-2014 season and $1,022,705 for the 2014-2015 season. The Air Services Agreement also required Marquette to deposit $1,067,390 into an escrow account before each of the two seasons to cover its required payment for that season.

To facilitate the escrow payments required by the Air Services Agreement, PJS, Marquette, and a third-party escrow agent entered into an "Escrow Agreement" on August 22, 2013. The Escrow Agreement provides for various matters related to the management of the escrow account, including the establishment of the account, the duties owed by the escrow agent to PJS and

Marquette, and the compensation owed to the escrow agent for its services.

The Air Services Agreement does not contain an arbitration clause but the Escrow Agreement provides in Article 15.1 that:

> Any controversy or claim arising out of or relating to this [Escrow Agreement], or the breach hereof . . . shall be settled by arbitration in accordance with commercial rules of the American Arbitration Association ("AAA").

Doc. No. 14-4 at 8.  The Escrow Agreement also contains a delegation clause in Article 15.8, which states that:

> Any dispute regarding the applicability of this Article [15] to a particular claim or controversy shall be arbitrated as provided in this Article [15].

Id. at 9.

The deadline for Marquette to escrow its payment for the 2014-2015 basketball season fell on September 1, 2014. Marquette did not meet the deadline.  Instead, on September 2, 2014, it informed PJS by letter that it had "made other arrangements for its men's basketball air charter services during the 2014-2015 academic year" and was therefore terminating the agreement.  Doc. No. 1 at 3.  PJS responded by bringing a breach of contract action in this Court.  Doc. No. 1. Marquette then moved to stay the action and compel arbitration in February 2015.  Doc. No. 14.

3

**II.   DISCUSSION**

"[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability . . . ."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (internal quotation omitted).  Ordinarily, gateway arbitrability questions are "issue[s] for judicial determination."  AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).  Thus, "[u]nless the parties clearly and unmistakably provide otherwise, the [threshold] question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  Id.  It follows, however, that parties to an arbitration agreement may, if they so choose, agree to delegate gateway arbitrability questions to an arbitrator rather than to a court.  Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010); Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 41 (1st Cir. 2012).  Such an agreement, often called a "delegation clause," "is simply an additional, antecedent [arbitration] agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  Rent-A-Center, 561 U.S. at 70.  Thus, "federal courts can

4

enforce [a delegation clause] by staying federal litigation under § 3 [of the FAA] and compelling arbitration." Id.

PJS does not challenge the validity of the delegation clause in Article 15.8 of the Escrow Agreement.[1] See Rent-A-Center, 561 U.S. at 71-72 ("[U]nless [a party] challenge[s] the delegation provision specifically, we must treat it as valid under [the FAA] . . . ."). Instead, it argues that the delegation clause has no bearing on the case because its claim against Marquette concerns only the separate Air Services Agreement, which does not contain an arbitration clause. In other words, it argues that Marquette's reliance on the delegation clause improperly "attempt[s] to insert an arbitration clause from one [unrelated] agreement into another" and compel arbitration of a claim that has nothing to do with

---

[1] As with any other arbitration agreement, a litigant can resist the enforcement of a delegation clause by challenging the validity of the provision itself. Rent-A-Center, 561 U.S. at 71. Thus, a litigant can argue that a delegation clause asserted to compel arbitration is unenforceable because it is unconscionable, for example, or because it originated from duress or fraud in the inducement. See id.; Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). PJS, however, makes no argument that attacks the validity of the delegation clause itself. It therefore implicitly recognizes the delegation clause as an enforceable agreement to arbitrate, rather than litigate, the arbitrability of claims between the parties under Article 15.1 of the Escrow Agreement. See Rent-A-Center, 561 U.S. at 72.

5

the Escrow Agreement.  Doc. No. 15-1 at 6 n.7.  This argument, although powerful on its merits, overlooks the fact that Marquette does maintain that PJS' claim "relat[es] to" the Escrow Agreement, Doc. No. 14-4 at 8, and therefore requires arbitration under the arbitration clause in Article 15.1 of the Escrow Agreement.  Thus, PJS and Marquette have a "dispute" over whether PJS' claim falls within the scope of the Escrow Agreement's arbitration clause.  See id. at 9.  Where, as here, parties to an arbitration agreement that is subject to a broad delegation clause disagree about whether their agreement covers a particular claim, an arbitrator ordinarily must resolve the gateway arbitrability dispute.  See Rent-A-Center, 561 U.S. at 68-70; Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011).

In extreme cases, a delegation clause that requires all arbitrability disputes to be resolved by an arbitrator can be abused if a party invokes the delegation clause to shield an obviously bogus arbitrability dispute from judicial review.  A handful of federal courts have attempted to address this potential problem.  Most prominently, the Fifth and Federal Circuits have refused to enforce even a broad and valid delegation clause if the underlying claim of arbitrability is wholly groundless – that is, if the claim to be arbitrated bears

no plausible relation to the asserted arbitration agreement.[2] See Douglas v. Regions Bank, 757 F.3d 460, 464 (5th Cir. 2014); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373-74 (Fed. Cir. 2006). Neither the Supreme Court nor the First Circuit, however, has adopted the wholly groundless rule. Nor has the rule met with widespread acceptance in other federal courts – no other circuit has adopted it, and only a small number of district courts have done so. See, e.g., Bernal v. Sw. & Pac. Specialty Fin., Inc., No. C 12-05797 SBA, 2014 WL 1868787, at *3 (N.D. Cal. May 7, 2014); Jones v. Regions Bank, 719 F. Supp. 2d 711, 716-17 (S.D. Miss. 2010). And it remains unclear whether the Supreme Court would approve the rule in light of its previous cases addressing the enforceability of delegation clauses. See Douglas, 757 F.3d at 468 (Dennis, J., dissenting).

In any event, I need not determine whether the wholly groundless rule would be adopted in this circuit because this case is quite different from the extreme cases in which other

---

[2] The Fifth Circuit justifies the wholly groundless rule by concluding that even when parties unmistakably delegate all arbitrability disputes to the arbitrator, they "obviously" could not intend to delegate arbitrability disputes that are wholly groundless. Douglas, 757 F.3d at 464. Thus, the court reasons, a court does not contravene the parties' expressed intentions by declining to enforce a delegation clause based on a wholly groundless claim of arbitrability. Id.

courts have applied the rule.  The Escrow Agreement, which contains both the arbitration and delegation clauses, establishes the escrow account that Marquette was to use to make the payments required by the Air Services Agreement.  The Escrow Agreement also expressly refers to the Air Services Agreement as an "attached" document.  See Doc. No. 14-4 at 2.  Furthermore, the parties made the two agreements within one day of each other.  Finally, the Air Services Agreement does not contain an integration clause specifying that the parties intended it to function as a complete agreement separate from the Escrow Agreement.  These facts suggest some commonality between the two agreements that, although sparse, could conceivably support an argument that PJS' claim that Marquette breached the Air Services Agreement is arbitrable because it "relate[s] to" the Escrow Agreement.  Id. at 8.  Comparing this case to those where courts have declined to enforce delegation clauses on the basis of wholly groundless claims of arbitrability, I cannot say that Marquette's arbitrability claim is wholly groundless.  See, e.g., Douglas, 757 F.3d at 464.

   Under the circumstances presented here, any more searching inquiry into whether the claim at issue falls within the scope of the arbitration clause would verge on deciding a request to

8

enforce an arbitration agreement based on the merits of the underlying dispute, which both the FAA and Supreme Court precedent forbid.  See AT&T Techs., 475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); Qualcomm, 466 F.3d at 1374 ("[A]ny inquiry beyond a 'wholly groundless' test would invade the province of the arbitrator . . . .").  The actual arbitrability of PJS' claim is a separate question that the delegation clause reserves for the arbitrator.  See Rent-A-Center, 561 U.S. at 72.  Because the delegation clause plainly requires the parties to arbitrate any dispute over arbitrability, and because the parties do not question the clause's validity, the FAA requires my analysis to end here.  See 9 U.S.C. §§ 2-4.

### III.  CONCLUSION

Marquette's motion to stay this action and compel arbitration (Doc. No. 14) is granted.  The case shall be stayed and the clerk shall administratively close the case, subject to reopening at the request of either party, as appropriate,

following arbitration.

SO ORDERED.

<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

May 12, 2015


cc:   Clara Ann Dietel, Esq.
      Steven M. Gordon, Esq.
      Garry R. Lane, Esq.
      Dustin M. Lee, Esq.
      John B. Tuffnell, Esq.